UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NICOLE R. AGER,<br><br>       Plaintiff,<br><br> v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>       Defendant. | Case No. 3:13-cv-05135-BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for February 28, 2014 |

  Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

  On December 23, 2009, plaintiff filed an application for SSI benefits, alleging disability due to a post traumatic stress disorder, crohn's disease, seizures, a sleeping disorder, ankylosing spondilitis, a bipolar disorder, and anxiety/panic attacks. <u>See</u> ECF #10, Administrative Record ("AR") 11, 146. That application was denied upon initial administrative review on March 11,

REPORT AND RECOMMENDATION - 1

2010, and on reconsideration on June 14, 2010. See AR 11.  A hearing was held before an administrative law judge ("ALJ") on March 10, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a lay witness and a vocational expert, and at which plaintiff alleged an onset date of disability of December 23, 2009. See AR 39-69.

In a decision dated May 24, 2011, the ALJ determined plaintiff to be not disabled. See AR 11-33.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 28, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 416.1481.  On February 26, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #1.  The administrative record was filed with the Court on May 8, 2013. See ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical opinion source evidence in the record from Kristi Breen, Ph.D., Bruce Eather, Ph.D., and Alyssa A. Ruddell, Ph.D.; (2) in rejecting the lay witness evidence in the record; (3) in assessing plaintiff's residual functional capacity; and (4) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.  For the reasons set forth below, the undersigned agrees the ALJ erred in part in evaluating the opinions of Drs. Breen and Eather, and thus in assessing plaintiff's residual functional capacity, in finding her to be capable of performing other jobs existing in significant numbers in the national economy, and in determining plaintiff to be not disabled.  Accordingly, the undersigned recommends that defendant's decision to deny benefits be reversed on this basis and that this matter be remanded for further administrative

REPORT AND RECOMMENDATION - 2

proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by

REPORT AND RECOMMENDATION - 3

I.      The ALJ's Evaluation of the Opinions of Dr. Breen and Dr. Eather

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

---

substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  <u>Id.</u> at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her.  <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected."  <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.  <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole."  <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."  <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."  <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

With respect to the medical opinions from Dr. Breen and Dr. Eather, the ALJ addressed those opinions in relevant part as follows:

> The medical evidence of record contains 2 evaluation forms completed for [the Washington State Department of Social and Health Services] in 2008 [by Dr. Breen] and in 2009 [by Dr. Eather respectively], before the alleged disability onset date.  In each, the claimant was assessed with marked to severe limitations in social functioning.  *See* Ex 2F3, 8F/3 . . .  The ratings have been considered, but are given little weight.  First, the limitations were largely based on the claimant's reports of social anxiety and isolation.  And second, as discussed above, the medical evidence of record for the period

REPORT AND RECOMMENDATION - 5

> since the alleged onset date shows the claimant socialized with her mother and with friends, had a boyfriend, displayed no inappropriate social functioning at medical appointments, and was described as cooperative and pleasant. The undersigned therefore concludes that she would be capable of interacting appropriately with supervisors and would be able to tolerate superficial contact with co-workers and the general public, as set forth in the [undersigned's] residual functional capacity. *See* Ex 2F/3, 8F/3 . . . These assessments were largely based on the claimant's self-report as well, although some clinical observation was also noted. But as discussed above, in the period since the alleged disability onset date, the claimant has performed well on mental status examination, had the concentration and focus to complete household chores, used the computer for socializing as well as job searches. The undersigned therefore concludes that the claimant would be capable of performing simple, routine tasks in the workplace, as set forth in the [undersigned's] residual functional capacity. Because the evaluations . . . did not accurately reflect the claimant's functioning during the period at issue and are not consistent with the claimant's functioning since the amended alleged disability onset date, they have been given little weight in the analysis herein.

AR 29. Plaintiff argues the ALJ erred in rejecting the mental functional limitations assessed by Dr. Breen and Dr. Eather. In addition to the marked to severe limitations in the area of social functioning those medical sources assessed, in the area of cognitive functioning Dr. Breen also found plaintiff had a marked limitation in her ability to perform routine tasks, and Dr. Eather found she had a moderate limitation in her ability to exercise judgment and make decisions. See AR 237, 280. In regard to those cognitive functional limitations, the undersigned agrees the ALJ erred in failing to properly consider them.

As noted above, the ALJ discounted the assessments of Drs. Breen and Eather – and found plaintiff would be capable of performing simple, routine tasks in the workplace – in part because those assessments were largely based on plaintiff's own self report, and because during the period subsequent to the alleged onset date of disability plaintiff "performed well on mental status examination, had the concentration and focus to complete household chores, [and] used the computer for socializing as well as job searches." AR 29. While the evidence shows plaintiff did well on some aspects of the mental status examinations Dr. Breen and Dr. Eather performed

REPORT AND RECOMMENDATION - 6

(see AR 239, 280, 283), Dr. Breen observed plaintiff "became tearful when she was unable to complete tasks or answer questions," and "just answered 'I don't know' to all questions" when she "became too upset," and Dr. Eather noted plaintiff was "unable to abstract proverb[s]" and "exhib[ited] diminished problem solving skills" (see AR 237, 280).

At least with respect to the above cognitive functional limitations Drs. Breen and Eather found, therefore, the evidence fails to show either medical source necessarily relied primarily on plaintiff's own self-report. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion that is based on clinical observations supporting diagnosis of depression is competent evidence); Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (when mental illness is basis of disability claim, objective medical evidence may consist of observations of professionals trained in field of psychopathology).  In addition, the clinical observations contained in the record dated subsequent to the alleged onset date of disability – which it should be noted are relatively few – show several areas where issues in cognitive functioning were found. See AR 537, 539.  Lastly, the evidence in the record also fails to establish that plaintiff engaged in activities to an extent adequate to contradict the moderate to marked cognitive functional limitations Dr. Breen and Dr. Eather found. See AR 48-49, 51-52, 57, 60, 62, 146, 171, 173-76, 183-87, 282, 538.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-

REPORT AND RECOMMENDATION - 7

related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform light work . . . in that she is able to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit for 6 hours in an 8-hour workday, and to stand and/or walk for 6 hours in an 8-hour workday, with no limitations with regard to pushing or pulling the above amounts.  The claimant is never able to climb ladders, ropes, or scaffolds.  She must avoid concentrated exposure to hazards.  She is able to perform simple, routine tasks, with occasional superficial contact with the public and co-workers.**

AR 15 (emphasis in original).  Because as discussed above the ALJ failed to properly consider the moderate to marked cognitive functional limitations Dr. Breen and Dr. Eather found, it cannot be said at this time that the ALJ properly excluded those limitations from her assessment of plaintiff's residual functional capacity, and therefore that that assessment is supported by substantial evidence.

REPORT AND RECOMMENDATION - 8

III.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 65. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age and education as plaintiff – would be able to perform other jobs. See AR 65-66. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 32-33. The undersigned agrees with plaintiff, however, that in light of the ALJ's errors discussed above, the ALJ's step five determination also

REPORT AND RECOMMENDATION - 9

cannot be said to be supported by substantial evidence at this time.

IV.  This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence from Drs. Breen and Eather concerning plaintiff's cognitive functional limitations, and therefore in regard to plaintiff's RFC and her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted. Although plaintiff argues remand for an award of benefits is appropriate, she has not yet shown that the substantial evidence in the record would require the ALJ to adopt the above cognitive functional limitations or that those

REPORT AND RECOMMENDATION - 10

limitations would result in a determination of disability at step five.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 28, 2014**, as noted in the caption.

DATED this 11th day of February, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11